COHEN v. ROSS.

(Supreme Court, Appellate Division, Second Department. June 3, 1904.)

1. CONVERSION—EVIDENCE.

Plaintiff, who had no money, with the exception of the proceeds of two drafts, amounting to over $400, which he intended to use in purchasing a business, while visiting defendant's sister for the purpose of becoming engaged to her, delivered the drafts to defendant to get them cashed; plaintiff being unknown in the neighborhood. Defendant cashed the drafts, and gave the proceeds to his sister; claiming that plaintiff had given them to her. Defendant and his sister, however, in an action for conversion of such proceeds, both testified that, when plaintiff delivered the drafts, he stated to defendant and his sister, "I want you to collect it for me," etc. *Held*, that such evidence did not support a finding that plaintiff intended to make a gift of such proceeds to defendant's sister.

2. SAME.

Where, in an action for conversion of the proceeds of certain drafts delivered by plaintiff to defendant to get cashed, defendant claimed that plaintiff delivered the drafts to him to get cashed, and give the proceeds to defendant's sister, whom plaintiff was about to marry, evidence that defendant's sister had promised plaintiff $400 as a dowry, in consideration of his marrying her, was admissible to rebut the theory of a gift of the proceeds of the drafts to her.

Appeal from Municipal Court of New York.

Action by Isaac Cohen against Samuel Ross. From a Municipal Court judgment in favor of defendant, plaintiff appeals. Reversed.

Walter E. Warner, for appellant.

No brief or appearance for respondent.

HIRSCHBERG, P. J. The action is brought for the conversion of the sum of $474.15, the proceeds of two checks which the plaintiff

alleges he gave to the defendant on November 22, 1902, to get cashed for him. The answer is a general denial, but it was not disputed upon the trial that the plaintiff did deliver to the defendant at the latter's residence, in Brooklyn, and at his request, on the night of November 22, 1902, two bank drafts for the sum, in the aggregate, of $476.15; that the defendant undertook to get them cashed for the accommodation of the plaintiff; that the defendant did draw the money on them the following day; and that the defendant has never paid any part of the money to the plaintiff, although such payment was demanded before the commencement of the action. The defense which the defendant litigated upon the trial was that the plaintiff told him to give the proceeds of the drafts to his (the defendant's) sister, Sarah Ross, as a present, and that he accordingly did make that disposition of the money.

It appears that the plaintiff was visiting the defendant on the night in question for the purpose of becoming engaged to the defendant's sister. He was accompanied by a marriage broker, or schatchen, by whom the engagement had been negotiated, and whose evidence corroborates his version of the occurrence, to the effect that nothing was said about giving the money to Sarah. He was then living at Paterson, N. J., where he intended to purchase a business with the proceeds of the drafts, and it is undisputed that he was at the time without funds other than the drafts; Sarah admitting upon the stand that she furnished him, on the night in question, car fare to enable him to go home. It seems to be further undisputed that the plaintiff became very angry when he finally learned that the money had been given to Sarah, and that he made immediate, but unavailing, efforts to procure a return of it for the purpose of making the business purchase referred to.

The delivery of the money by the defendant to his sister was with the intent of vesting the title to it in her. He gave it to her to keep as her own. She deposited it in a savings bank, to his knowledge, as her own, and he consented to and intended that disposition of it. He may therefore be regarded as having converted the money, unless he had the plaintiff's authority to deliver it to his sister as and for her own. But neither his evidence, nor that of his sister, discloses unequivocally the intention on the plaintiff's part to make a gift. The defendant gave this version of the transaction on his cross-examination:

"Mr. Cohen got up, and he took out two checks, and he says, 'I have two checks from Canada, and I would like to know how I can get it cashed. It is a hard thing,' he says, 'to get it cashed. I have to have somebody to identify me.' So I told him that I have a bank account, and I can do it for him. So he said, 'All right.' Q. Did you volunteer your services in cashing those checks? A. Yes. Q. It was on your own volition, wasn't it? A. Yes. Q. What were the amounts of those checks? A. I don't know, separately, but I know they were about four hundred and seventy-six dollars and fifteen cents. Q. When he handed those checks to you, what did he say? A. He didn't say anything. He only said, 'I will be very much obliged to you if you will get the money for me.' Q. Did he say anything at all after that? A. Yes. After that he called my sister in from the store. She was talking there to Mr. Urdong, and I think he called her in; and he told her, 'I give your brother checks for four hundred and seventy-six dollars, and I

want you to collect it for me when he gets that money.' He said, 'It will take him some time before he gets it. You get it for me.'"

Sarah testified to substantially the same story, viz.:

"Q. What happened next, about the checks? A. And after Cohen called me in, he took me by my hand and he says: 'Here, Sarah, I give to your brother two checks, amounting to four hundred and seventy dollars, and over, and you should collect the money for me, because I live out of town.'"

On the evidence, therefore, of the witnesses principally concerned, the unlikely circumstance of a poor peddler giving away substantially all his money can hardly be said to have been established with that degree of precision and certainty which may be deemed essential to preponderance.

But an important matter was excluded from the jury's consideration by erroneous rulings of the court, and for that alone a new trial is required. The defendant offered to prove, as a circumstance bearing on the possibilities of the stories of the respective parties, that he was promised a dowry of $400, as a part of the contract of engagement. This evidence was excluded whenever offered, and on Sarah's cross-examination the question was excluded: "Didn't you promise Mr. Cohen four hundred dollars as dowry if he takes you?" This ruling was clearly erroneous. The jury might very well have doubted the defendant's claim that the plaintiff was making his fiancée a present of what to him was a very large sum of money, if not, indeed, his entire fortune, if they had known that he was then exacting a payment to himself as a condition of consenting to the marriage engagement. The proposed evidence was so related to the question at issue as to be certainly competent on cross-examination of the person who claimed the gift; bearing, as it did, directly upon the question of her sincerity, good faith, and credibility.

The judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.